**KELLEY et al., Admrs.,**

**v.**

**MIDWESTERN INDEMNITY COMPANY et al., Appellees;
State Farm Fire & Casualty Company, Appellant.**

[Cite as *Kelley v. Midwestern Indemn. Co.* (1995), 108 Ohio App.3d 207.]

Court of Appeals of Ohio,
First District, Hamilton County.

Decided Dec. 29, 1995.

*Thompson, Hine & Flory, Ethna B. Cooper* and *Robert P. Johnson,* for appellees Midwestern Indemnity Company and Mid–American Fire & Casualty Company.

*Robert L. Davis,* for appellant State Farm Fire & Casualty Company.

*Per Curiam.*

Kathleen M. Kelley died on September 8, 1991, as a result of injuries she sustained in a motorcycle accident on September 2, 1991. When the accident occurred, Kathleen Kelley was a passenger on a motorcycle owned and driven by nineteen-year-old Nicholas Ernst. Ernst's motorcycle was insured under a policy issued by Progressive Insurance Company ("Progressive"). The bodily injury limits of the Progressive insurance policy were $12,500 per person and $25,000 per occurrence. The limits of the Progressive policy were paid to the estate of Kathleen M. Kelley.

At the time of the accident, Nancy and James Kelley, the parents of Kathleen M. Kelley, were insured under a family automobile policy issued by Midwestern Indemnity Company ("Midwestern"), which provided underinsured motorist benefits in the amount of $100,000 per person and $300,000 per occurrence. Nancy and James Kelley also had a homeowners umbrella policy issued by Mid–American Fire & Casualty Company ("Mid–American"), which provided coverage in the amount of $1,000,000 on the date of the accident. The underinsured motorist coverage contained in the Midwestern policy stated:

"We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

At the time of the accident, Nicholas Ernst was a resident of the household of his parents, Daniel and Joan Ernst. Daniel and Joan Ernst carried a primary automobile liability insurance policy through State Farm Fire & Casualty Company ("State Farm"). The limits of the Ernsts' automobile liability insurance were $100,000 per person and $300,000 per occurrence. Nicholas Ernst was not insured under his parents' automobile liability insurance policy. Daniel and Joan Ernst were also the named insureds on an $1,000,000 umbrella liability insurance policy issued by State Farm. It is undisputed that Nicholas Ernst was an "insured" under the State Farm umbrella policy.

On June 8, 1992, Nancy and James Kelley, administrators of the estate of Kathleen M. Kelley, filed a complaint for wrongful death against Nicholas Ernst under case No. A–9205160 in the Hamilton County Court of Common Pleas. On September 1, 1992, the Kelleys filed a complaint for declaratory judgment against Midwestern and Mid–American under case No. A–9207791. Midwestern and Mid–American filed a third-party complaint against Nicholas Ernst, Joan and Daniel Ernst, and State Farm. The wrongful death action was subsequently consolidated with the declaratory judgment action.

Midwestern and Mid–American filed a motion for summary judgment on the third-party complaint. The trial court granted the motion for summary judgment, holding that the $1,000,000 umbrella policy issued by State Farm to Joan and Daniel Ernst provided coverage for Kathleen M. Kelley's damages. The trial court further held that coverage under the State Farm umbrella policy was triggered upon the exhaustion of "an underlying policy issued by Progressive Insurance Company to third-party defendant Nicholas Ernst." The trial court also held that coverage under the Midwestern and Mid–American insurance policies would be triggered only upon exhaustion of the State Farm umbrella policy. The entry of summary judgment contained a Civ.R. 54(B) certification.

State Farm appealed, raising one assignment of error, which alleges that the trial court erred in granting the motion for summary judgment. State Farm

argues that the terms of its umbrella policy required Nicholas Ernst to maintain underlying insurance coverage of $100,000 per person and $300,000 per occurrence. Because Nicholas Ernst did not maintain the required minimum limits, State Farm argues that it is not liable for the difference between the required minimum limits of $100,000 per person and $300,000 per occurrence and Nicholas Ernst's actual underlying coverage of $12,500 per person and $25,000 per occurrence. We agree.

The "named insured" is defined in the State Farm umbrella policy as "the person named in the Declarations and the spouse." Therefore, Daniel and Joan Ernst were the "named insureds" under the State Farm umbrella policy. The policy provides a separate and distinct definition for "insured." The State Farm umbrella policy defines the term "insured" to include (1) the named insured, (2) the named insured's relatives residing in the named insured's household, and (3) anyone under the age of twenty-one under the care of a person named above.

█ Nicholas Ernst was an "insured" under the State Farm umbrella policy because he was a relative of and a resident of the household of Daniel and Joan Ernst, and was nineteen years old and under the care of Daniel and Joan Ernst at the time of the accident. The definitions section of the State Farm umbrella policy provides that:

"In this policy, 'you' and 'your' refer to the 'insured' as defined. 'We,' 'us' and 'our' refer to the Company listed in the Declarations."

The State Farm umbrella policy also provides:

"Required underlying insurance coverage: You agree that the underlying insurance listed below:

"(1) Is in force and will be continued in force for at least the limits shown.

"(2) Insures all land motor vehicles or watercraft owned by, rented by, or regularly furnished to you."

The "minimum underlying limits" shown for automobile liability insurance are $100,000 per person and $300,000 per occurrence.

The State Farm umbrella policy further provides that coverage may not be provided if the insured refuses to maintain the underlying insurance. The policy states:

"All insurance listed in the Declarations must be maintained at all times. The limits listed in the Declarations are the minimum you must maintain. If the required underlying limits are not maintained, you will be responsible for the underlying limit amount of any loss."

Pursuant to the State Farm umbrella policy provisions, the required underlying insurance included all land motor vehicles owned by, rented by or regularly furnished to an insured. Clearly Nicholas Ernst's motorcycle was a land motor vehicle owned by or regularly furnished to an insured. We hold that the unambiguous language of the State Farm umbrella policy required Nicholas Ernst to maintain minimum underlying insurance coverage of $100,000 per person and $300,000 per occurrence. The State Farm umbrella policy did not limit the requirement of carrying minimum underlying insurance coverage of $100,000 per person and $300,000 per occurrence to the "named insured." By defining "you" and "your" to mean an "insured" as opposed to the "named insured," the policy extended that requirement to all "insureds." We hold that under the clear and unambiguous terms of the State Farm umbrella policy, if an insured failed to maintain the minimum required underlying limits of coverage, State Farm was not liable for the difference between the limits which the insured maintained, in this case $12,500 per person and $25,000 per occurrence, and the required limits of $100,000 per person and $300,000 per occurrence.

Appellees argue that the State Farm umbrella policy was triggered upon the exhaustion of the Progressive policy. The State Farm umbrella policy states:

"If you are legally obligated to pay damages for a loss, we will pay your net loss minus the retained limit."

The State Farm policy defines "retained limit" as:

"(a) the total limits of liability of your underlying insurance; or

"(b) the amount shown on the Declarations as the 'self-insured retention.' This amount applies only if this policy applies but your required underlying insurance policy does not include coverage for the loss."

The "self-insured retention" for the Ernsts under the State Farm umbrella policy was "NONE." Appellees argue that the "underlying insurance policy" was Daniel and Joan Ernst's State Farm automobile liability insurance policy. Because that policy did not apply to the loss, appellees argue, the retained limit is "zero" and therefore, the State Farm umbrella policy is triggered upon the exhaustion of Nicholas Ernst's Progressive policy. We disagree.

We hold that in this case Nicholas Ernst's Progressive insurance policy was the underlying insurance policy referred to in the State Farm umbrella policy. Nicholas Ernst's Progressive policy did provide coverage for the loss. The State Farm umbrella policy contemplated the possibility that the "required underlying policy" may have been provided through a company other than State Farm by including provisions such as:

"Appeals. If you or your underlying insurer choose not to appeal a judgment that we must help pay, we may choose to make the appeal. If we make the appeal, we will be responsible for:

"a.  our limit of liability above the retained limit;  and

"b.  the additional costs and interest incurred during the appeal."

In summary, we hold that Nicholas Ernst, as a defined insured under the State Farm umbrella policy, was required to maintain underlying insurance coverage with limits of $100,000 per person and $300,000 per occurrence. He did not. Pursuant to its umbrella policy, State Farm has no liability for the difference between the actual limits of Nicholas Ernst's underlying insurance coverage of $12,500 per person and $25,000 per occurrence and the required minimum limits of underlying insurance of $100,000 per person and $300,000 per occurrence. The trial court erred in holding otherwise. The assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., HILDEBRANDT and SUNDERMANN, JJ., concur.